1 | ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail:     *zalinder@sideman.com*
2 | LYNDSEY C. HEATON (State Bar No. 262883)
E-Mail:     *lheaton@sideman.com*
3 | SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
4 | San Francisco, California 94111-3711
Telephone:     (415) 392-1960
5 | Facsimile:     (415) 392-0827

6 | Attorneys for Plaintiff
TESLA, INC.

7

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 — TESLA, INC., a Delaware Corporation, | Case No. 3:19-cv-01462 |
| 12 —        Plaintiff, | |
| 13 —    v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| 14 — ZOOX, INC., a Delaware Corporation; SCOTT TURNER, an individual; SYDNEY COOPER, an individual; CHRISTIAN DEMENT, an individual; and, CRAIG EMIGH, an individual, | **1.    MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT;** |
| 15 — | **2.    MISAPPROPRIATION OF TRADE SECRETS UNDER THE CALIFORNIA UNIFORM TRADE SECRETS ACT;** |
| 16 — | |
| 17 —        Defendants. | **3.    BREACH OF CONTRACT;** |
| 18 — | **4.    BREACH OF DUTY OF LOYALTY; AND,** |
| 19 — | **5.    AIDING AND ABETTING BREACH OF DUTY OF LOYALTY.** |
| 20 — | |
| 21 — | **DEMAND FOR JURY TRIAL** |

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**SUMMARY OF THE ACTION**

2       1.      This dispute arises out of the concerted efforts of Zoox, Inc. ("Zoox"), a competitor

to Tesla, Inc. ("Tesla"), and several now-former Tesla employees, to steal Tesla's proprietary

information and trade secrets to help Zoox leapfrog past years of work needed to develop and run

its own warehousing, logistics, and inventory control operations. As they departed Tesla, these

employees, including Defendants Scott Turner ("Turner"), Sydney Cooper ("Cooper"), Christian

Dement ("Dement"), and Craig Emigh ("Emigh"), absconded with select proprietary Tesla

documents useful to their new employer, and at least one of them used Tesla's confidential

information to target other Tesla employees for hiring by Zoox. In the process, they

misappropriated Tesla's trade secrets, violated their agreements with Tesla, and breached their

duties of loyalty, all with the knowledge and support of Zoox.

       2.      The theft here was blatant and intentional. For example, just before departing Tesla

for Zoox, Defendant Turner – a manager in Tesla's Newark, California Regional Distribution

Center – emailed two confidential Tesla documents to his personal email address, with only the

words "you sly dog you..." in the body of the email. Similarly, shortly before his own departure

from Tesla, Defendant Dement – a former warehouse supervisor – sent four confidential Tesla

documents to his personal email account, with the subject line "Good Stuff." After Defendant

Emigh joined Zoox, he mistakenly sent an email to Cooper's old Tesla email address, attaching a

modified version of a Tesla proprietary document, freshly-emblazoned with the Zoox logo, yet

still bearing the layout, design, and other vestiges of the Tesla version – showing, without doubt,

that the Defendants are actively using the Tesla information they stole.

       3.      While Tesla respects that employees may decide to pursue other employment

opportunities, it must take action when current and former employees abuse their positions of trust

and blatantly violate their legal and contractual obligations to Tesla. Accordingly, Tesla files this

action (the "Action") to put a stop to Defendants' illegal conduct, prevent further misuse of

Tesla's proprietary information and trade secrets, and to recover all damages caused by

Defendants' unlawful scheme.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## THE PARTIES

4.     Tesla is a Delaware corporation with its principal place of business at 3500 Deer Creek Road, Palo Alto, California.

5.     Tesla is informed and believes, and thereon alleges, that Zoox, including doing business in California as Zoox Labs, Inc., is a Delaware corporation with its principal place of business in Foster City in San Mateo County, California and with testing operations in San Francisco, California.

6.     Tesla is informed and believes, and thereon alleges, that Turner is a California resident with his principal residence in Union City, California, and that he is currently an employee of Zoox.  Turner is also a former employee of Tesla.

7.     Tesla is informed and believes, and thereon alleges, that Cooper is a California resident with her principal residence in Hercules, California, and that she is currently an employee of Zoox.  Cooper is also a former employee of Tesla.

8.     Tesla is informed and believes, and thereon alleges, that Dement is a Pennsylvania resident with his principal residence in Macungie, Pennsylvania, and that he was expected to join Zoox as well.  Dement is also a former employee of Tesla.

9.     Tesla is informed and believes, and thereon alleges, that Emigh is a California resident with his principal residence in Fremont, California, and that he is currently an employee of Zoox.  Emigh is also a former employee of Tesla.

10.     Tesla refers in this Complaint to Turner, Cooper, Dement, and Emigh collectively as the "Individual Defendants."  Tesla refers to the Individual Defendants and Zoox, together, as "Defendants."

## JURISDICTION AND VENUE

11.     This action arises under the Defend Trade Secrets Act, and this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c).  This Court has supplemental jurisdiction over Tesla's state-law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal claims and derive from the same operative facts.

12.     This Court has personal jurisdiction over Defendants because they have transacted

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711
LAW OFFICES
SIDEMAN & BANCROFT LLP

1   business in and have caused injury to Tesla within the State of California. As discussed below, the

2   Individual Defendants also breached agreements with Tesla that provide for exclusive jurisdiction

3   in the state and federal courts in Santa Clara or San Francisco Counties. Further, Tesla is

4   informed and believes that most of the Individual Defendants reside in the Northern District.

5       13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

6   substantial part of the events giving rise to the claims occurred in this District, and because the

7   Individual Defendants have contractually agreed to litigate disputes in this District.

8                           **INTRA-DISTRICT ASSIGNMENT**

9       14.     Pursuant to Civ. L.R. 3-2, this Action is properly assignable in the San Francisco

10  Division or San Jose Division, as the Individual Defendants' agreements with Tesla provide for

11  exclusive jurisdiction in the state and federal courts located in Santa Clara or San Francisco

12  Counties, and Zoox has its principal place of business in San Mateo County.

13                      **FURTHER RELEVANT FACTUAL ALLEGATIONS**

14      **A. Tesla and Its Proprietary Distribution and Logistics Systems**

15      15.     Tesla is an American company that designs, manufactures, and sells electric cars,

16  electric vehicle powertrain components, as well as scalable clean energy generation and storage

17  products. Tesla also researches and develops self-driving capability for integration in its electric

18  vehicles. Tesla is the world's first vertically-integrated sustainable energy company, and has

19  established a global network of stores, vehicle service centers, and charging stations to accelerate

20  the widespread adoption of zero-emissions vehicles.

21      16.     As a vertically-integrated company, Tesla has expended significant resources in

22  developing its sourcing, design, manufacturing, warehousing, and distribution logistics and

23  operations. For example, Tesla has developed a proprietary system called WARP, a multi-

24  functional software platform designed to manage Tesla's manufacturing, warehousing, inventory,

25  distribution, transportation, and implementation systems. As another example, Tesla employs a

26  proprietary system to track inventory into and out of its warehouses and distribution centers and

27  utilizes a variety of manuals and process documents to memorialize those procedures. These

28  materials and knowhow were developed by Tesla over many years, and at great expense, and

Tesla considers them to be proprietary, confidential trade secrets.

**B. Tesla Vigorously Protects Its Confidential Information**

17.    Tesla's policies and practices robustly protect confidential and proprietary information, including the information misappropriated by Defendants here.  For example, Tesla requires all its employees to enter into non-disclosure agreements that obligate them to safeguard the company's confidential information, including trade secrets and source code.  As further discussed below, employees must sign these agreements as a condition of their employment, and must periodically re-sign as the company updates its agreements.

18.    In addition, Tesla secures its physical facilities by restricting access to authorized personnel, and then monitoring actual access with security guards and cameras.  Visitors to Tesla's facilities must check in with a receptionist or security guard, sign a nondisclosure agreement, and submit to a photograph.  Visitors must further be escorted by a Tesla employee at all times.

19.    Tesla also protects its confidential information with stringent information security policies and practices.  Tesla's network and servers are themselves password-protected and firewall-protected and are accessible only to current Tesla employees with proper credentials.  After an employee resigns or is terminated, Tesla promptly deactivates that user's system permissions, which cuts off access to Tesla's network.

20.    In addition, Tesla policy forbids employees from sending confidential information to unauthorized third parties, and even to employees' own personal email addresses.  This policy is conveyed to employees in a number of ways, both formally and informally, including through a written reminder that employees "must not … forward work emails outside of … Tesla or to a personal email account," which Turner, Dement and Emigh each signed and acknowledged.

**C. The Former Tesla Employees Hired By Zoox**

21.    The Individual Defendants here worked in warehouse and distribution center management at Tesla's regional Parts Distribution Centers ("PDC") in Newark, California and Bethlehem, Pennsylvania.  Defendant Turner joined Tesla on May 19, 2014 and most recently served as Tesla's Distribution Center Manager at Tesla's PDC in Newark.  In that role, Turner served as a manager with Defendants Emigh and Cooper as his direct or indirect reports.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Defendant Dement joined Tesla on October 20, 2014, and initially worked in Tesla's Newark PDC with Defendant Turner. In his last position with Tesla, Dement served as a Supervisor at Tesla's warehouse in Bethlehem, Pennsylvania. Defendant Emigh joined Tesla on September 21, 2015. In his last role at Tesla, Emigh had the position of Regional Parts Distribution Supervisor, also at Tesla's Newark PDC. Defendant Cooper was the latest to join Tesla, on May 21, 2018. Cooper's last role was as the Supervisor of the Inventory Control Team at the Newark PDC. As a result of its investigation, Tesla believes that Turner, Emigh, and Cooper are all current employees of Zoox, and that Dement is either a Zoox employee or is expected to become one in short order.

**D. The Individual Defendants Each Agreed to Safeguard Tesla's Confidential Information and to Avoid Unfair Solicitation**

22.     As a condition of their employment, all of the Individual Defendants agreed to maintain the confidentiality of Tesla's information and to avoid poaching Tesla's employees within one year of their departure. For each of the Individual Defendants, the operative non-disclosure agreement was the Tesla, Inc. Employee Nondisclosure And Inventions Assignment Agreement (referred to herein as the "NDA" or "Non-Disclosure Agreement"), which was electronically signed by Turner on August 31, 2017, Cooper on June 13, 2018, Emigh on September 20, 2015, and Dement on October 19, 2014.

23.     Through the NDA, Tesla employees pledge, among other things, to not disclose Tesla's "Proprietary Information," defined to include "all information, in whatever form and format, to which I have access by virtue of and in the course of my employment," and encompassing, as relevant here, "technical data, trade secrets, know-how, … plans, designs, … methods, processes, … data, programs, lists of or information relating to, employees, suppliers, ... financial information and other business information[.]" NDA ¶ 1 (attached hereto as Exhibit A and incorporated herein).

24.     Pursuant to the NDAs, the Individual Defendants also agreed to refrain from soliciting Tesla's employees to work at another company within 12 months of leaving Tesla, in recognition of the fact that the Individual Defendants "have obtained . . . valuable information about the Company's employees" during their time at Tesla. NDA ¶ 9.2.1. The NDA also

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  precludes employees from using confidential information—including about employees' pay,

2  expertise, and projects—at any time to recruit away Tesla's employees. NDA ¶ 9.2.2; *see* ¶ 1.

3  **E. Zoox Aims to Build a Fleet of Autonomous Vehicles and to Compete with Tesla**

4  25. Defendant Zoox is reportedly attempting to create a robotic taxi service and plans

5  to build, own, and operate its own fleet of self-driving electric vehicles. This aspiration echoes

6  Tesla's longstanding plans to allow customers to add their Tesla vehicles to a shared, self-driving

7  Tesla fleet, and thereby earn money when they are not using their vehicles. Like numerous other

8  companies, Zoox has branded itself as a competitor to Tesla.

9  26. Zoox is targeting a launch date of 2020, and to date, has not commercially released

10  any self-driving cars or software. To meet its goal, Zoox has said it will need an "enormous

11  amount of cash and lots of good engineers." To do so, it has aggressively hired current and former

12  Tesla employees. *See* Robotaxi Startup Zoox Becomes A Big Acquirer Of Tesla-Incubated

13  Talent, Forbes.com, June 27, 2018. As of June 2018, more than 80 of Zoox's 500 employees

14  (16%) reportedly came directly to Zoox from Tesla. *See id.* Currently, over 100 LinkedIn profiles

15  list Zoox as a current employer and Tesla as a former employer.

16  **F. Zoox Hires the Individual Defendants, and Each Time Receives New Tesla**

17     **Confidential Information**

18  27. The facts here, while egregious, are not complicated. Based on the information

19  uncovered to date, former Tesla employee Turner initially left Tesla to join Zoox and took Tesla

20  trade secret and proprietary documents with him. Emigh joined shortly thereafter, apparently

21  followed by Cooper and Dement, and they too took Tesla trade secret and proprietary information

22  with them as they departed. These trade secret and proprietary documents were then used by Zoox

23  in its bid to catch up to, and compete with, Tesla.

24  **(1)     Turner**

25  28. On November 1, 2018, Turner emailed two confidential Tesla documents from his

26  Tesla email account to his personal email address with the note to himself, "you sly dog you."

27  The attachments contained confidential and proprietary Tesla receiving and inventory procedures,

28  as well as internal schematics and line drawings of the physical layouts of certain Tesla

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  warehouses. He sent another email to his personal email address that same day, attaching an

2  additional confidential Tesla document, and a note that said, "Ooooh man... so much time and

3  effort. Loved every second of it though." Turner resigned a little over a month later.

4       29.    As Tesla has now learned, by February 2019, Turner was actively recruiting

5  Cooper and Dement (still employees at Tesla) to come over to Zoox. Turner also provided the

6  names of at least four other Tesla employees to a Zoox recruiter along with insights about their

7  pay structure at Tesla and a recommendation for their starting salaries at Zoox. In addition, in late

8  February, Turner sent text messages to Cooper requesting copies of confidential Tesla documents

9  relating to inventory management. Tesla does not know what was sent in response to Turner's

10  request.

11            **(2)    Emigh**

12       30.    The pattern repeated with Emigh. On December 4, Emigh emailed himself a

13  proprietary Tesla document relating to Tesla's standards for workplace safety and efficiency. He

14  resigned on December 9, 2018, and he now works at Zoox.

15            **(3)    Cooper**

16       31.    With Cooper, there was a small variation on the theme. On February 26, 2019,

17  Cooper submitted her resignation to Tesla and indicated she had accepted a job offer at Zoox. The

18  next day, on February 27th, Tesla met with Cooper regarding allegations that she had provided

19  confidential Tesla information to Turner and Zoox. Cooper denied the allegations initially. When

20  presented with two confidential and proprietary Tesla documents (relating to inventory control

21  procedures) she had sent to Turner, she admitted to doing so and made vague excuses. A later

22  review of her Tesla emails revealed that Cooper had sent at least one more proprietary Tesla

23  document (relating to Tesla's human resource policies) to Turner at his Zoox email address.

24            **(4)    Dement**

25       32.    The obfuscation continued with Dement. On March 1, 2019, Tesla met with

26  Dement regarding Zoox and Turner. During that interview, Dement did not reveal that Turner had

27  been recruiting him for a job, nor did he tell Tesla that he planned to resign. Tesla later uncovered

28  that, on February 28, 2019, Dement had sent an email from his Tesla account to his personal email

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    account with the subject line "Good Stuff" and attached four confidential and proprietary Tesla

2    documents. Among other things, these documents included confidential and proprietary

3    information regarding a Tesla "Service Campaign" related to Tesla's Falcon Wing doors for its

4    Model X, and included confidential parts pricing information, an export of information of Tesla's

5    confidential and proprietary WARP system regarding the tracking and monitoring of parts

6    inventory, and several analyses of such information.

7        **G. Zoox Mistakenly Reveals Actual Use of The Stolen Tesla Documents**

8        33.    A few weeks later, on March 12, 2019, Emigh sent an email using his @zoox.com

9    email address to Cooper's old email address at Tesla. Presumably this email was inadvertent and

10   the result of Cooper's old Tesla email address auto-populating. The subject line of the email was

11   "Stocking SOP," and the document contained one attachment, titled "Receiving WI-19-CHESS-

12   STK-01." The document bore the Zoox logo and described detailed processes for stocking

13   product systematically and physically within a warehouse. The Logistics Manager listed on the

14   Zoox document was Turner.

15       34.    Tesla has determined that this "Zoox" document was based nearly entirely on a

16   proprietary Tesla standard operating procedures ("SOP") document. The Tesla version had been

17   emailed by Turner (while still at Tesla) to the employee who would be replacing him, with the

18   subject line, "Do Not Forward." While the email from Turner seemed innocuous at the time,

19   Tesla later learned that Turner had blind copied Cooper on this email—without context or

20   explanation.

21       35.    The layout and structure of the Tesla and "Zoox" versions are nearly identical.

22   Indeed, Zoox left at least one reference to another proprietary Tesla document, showing that Zoox

23   didn't even bother to remove references to Tesla when copying Tesla's work. Tesla, on the other

24   hand, spent significant time and effort in creating, modifying, and updating this SOP document, as

25   evidenced by the version control information which identifies numerous previous iterations

26   created over four years of work.

27       36.    Turner made a similar blunder on March 15, 2019, mistakenly forwarding a

28   document from his Zoox email address to Cooper's old Tesla email address, which appears to be

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    another Tesla procedures document that has been modified and emblazoned with a Zoox logo.

2        37.     These "slipups" remove any doubt about why the Individual Defendants took

3    Tesla's proprietary and trade secret documents and confirm that Zoox is wrongfully using the

4    stolen materials for its own benefit. Moreover, given the circumstances, there can be no doubt that

5    Zoox is aware of the Individuals' theft of Tesla's documents.  The pattern is undeniable, and the

6    benefits to Zoox are clear.

7        **H.  The Stolen Tesla Documents Were Confidential and Proprietary, and Their**

8            **Misappropriation Has Damaged Tesla**

9        38.     The documents stolen from Tesla include Tesla's confidential, proprietary, and

10   trade secret information. Among other things, the documents provide a roadmap for how to

11   design, implement, and manage a warehouse and inventory system for the production of electric

12   vehicles.  This information allows Zoox to copy significant parts of Tesla's work in these areas,

13   without investing the substantial effort, time, and resources that Zoox would need to even attempt

14   to develop these systems on its own.  This is information that Tesla does not make available to

15   competitors or to the public.

16       39.     The stolen documents also disclose information about prices that Tesla has

17   negotiated with certain vendors, which is competitively sensitive and closely guarded.  This

18   pricing information could allow a competitor such as Zoox to obtain the same or better pricing

19   from its suppliers by leveraging Tesla's internal and confidential pricing information.

20       40.     There can be no doubt that the confidential and proprietary Tesla documents and

21   data specifically exfiltrated by these Zoox employees have independent value from being not

22   generally known and that the information in them could not be readily ascertainable through

23   proper means.  That is not only objectively the case, but the fact that employees and former

24   employees of Tesla took such risks to steal these documents further demonstrates their value.

25   / / / /

26   / / / /

27   / / / /

28   / / / /

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**TESLA'S CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

**(Misappropriation of Trade Secrets under the Defend**

**Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)**

**Against All Defendants**

41.     Tesla incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

42.     Tesla's information, designs, and other "knowhow" related to its technical, logistical, and operational plans, manuals, programs, and procedures constitute trade secrets as defined by the Defense of Trade Secrets Act.

43.     Tesla maintains its trade secrets as confidential and proprietary and does not share them with competitors or the public.

44.     Tesla keeps the trade secret information alleged in this Complaint confidential and has undertaken reasonable efforts to maintain the secrecy of the trade secrets at issue, as alleged above.

45.     Tesla's vehicle and other products are regularly shipped and sold in interstate and foreign commerce. As such, Tesla's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

46.     Tesla's trade secret information described herein derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, others who could obtain economic value from the disclosure or use of the information.

47.     Such confidential information constitutes trade secrets within the meaning of the Defense of Trade Secrets Act.

48.     In violation of Tesla's rights, Defendants misappropriated Tesla's trade secret information in the improper and unlawful manner alleged herein. As alleged above, the Individual Defendants accessed Tesla's trade secret information while working as employees of Tesla and then transmitted such trade secret information to Defendant Zoox in violation of the Individual

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  Defendants' duties of loyalty as employees to Tesla and in breach of their NDAs with Tesla.

2  Upon information and belief, Defendant Zoox was aware of the restrictions on the Individual

3  Defendants' ability to transmit Tesla's trade secret information, yet encouraged the Individual

4  Defendants to do so and has since used Tesla's trade secrets for its benefit.  Defendants'

5  misappropriation of Tesla's confidential, proprietary, and trade secret information was intentional,

6  knowing, willful, malicious, fraudulent, and oppressive. Defendants have attempted and continue

7  to attempt to conceal their misappropriation.

8      49.    Defendants knew or should have known under the circumstances that the

9  information misappropriated was trade secret information.

10     50.    Tesla is informed and believes, and on that basis alleges, that Defendants are now

11  using Tesla's trade secrets, without its consent, to build and run competing warehousing, logistics,

12  and inventory control operations.

13     51.    Tesla is informed and believes, and on that basis alleges, that if Defendants are not

14  enjoined, Defendants will continue to misappropriate and use Tesla's trade secret information for

15  their own benefit and to Tesla's detriment.

16     52.    As a direct and proximate result of Defendants' conduct, Tesla has been damaged

17  in amount to be proven at trial. Tesla has also incurred, and will continue to incur, additional

18  damages, costs and expenses, including attorney's fees, as a result of Defendants'

19  misappropriation. As a further proximate result of the misappropriation and use of Tesla's trade

20  secrets, Defendants were unjustly enriched.

21     53.    If Defendants' conduct is not stopped, Tesla will continue to suffer competitive

22  harm and irreparable injury.  Because Tesla's remedy at law is inadequate, Tesla seeks, in addition

23  to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its

24  confidential, proprietary, and trade secret information and other legitimate business interests.

25     54.    In performing the conduct described herein, Defendants acted willfully and

26  maliciously, intending to injure Tesla and to wrongfully obtain an advantage at Tesla's expense

27  and detriment.  As a result of this conduct, Tesla is entitled to an award of exemplary damages

28  against Defendants as well as attorneys' fees and costs incurred in this action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CAUSE OF ACTION**

**(Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act,**

**Cal. Civ. Code § 3426 *et seq.*)**

**Against All Defendants**

55.     Tesla incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

56.     Tesla's information, designs, and other "know how" related to its technical, logistical, and operational plans, manuals, programs, and procedures constitute trade secrets as described above and as defined by California's Uniform Trade Secrets Act.

57.     Tesla keeps the trade secret information alleged in this Complaint confidential and has undertaken reasonable efforts to maintain the secrecy of the trade secrets at issue, as discussed above. Tesla's trade secret information described herein derives independent economic value from not being generally known to the public or others who could obtain economic value from their disclosure or use (such as competitors).

58.     Such confidential information constitutes trade secrets within the meaning of California Civil Code Section 3426.1.

59.     Defendant Zoox misappropriated Tesla's trade secret information at least by acquiring such information improperly from the Individual Defendants in violation of those individuals' duties of loyalty to Tesla and in breach of their NDAs.

60.     Defendants knew or should have known under the circumstances that the information misappropriated was trade secret information.

61.     Tesla is informed and believes, and on that basis alleges, that Defendants are now using Tesla's trade secrets, without its consent, to build and run competing warehousing, logistics, and inventory control operations.

62.     Defendants' misconduct detailed herein constitutes misappropriation of Tesla's trade secrets and violates Sections 3426 *et seq*. of the California Civil Code.  As a direct and proximate result of Defendants' conduct, Tesla has been damaged in amount to be proven at trial. Tesla has also incurred, and will continue to incur, additional damages, costs and expenses,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  including attorney's fees, as a result of Defendants' misappropriation. As a further proximate

2  result of the misappropriation and use of Tesla's trade secrets, Defendants were unjustly enriched.

3    63. Pursuant to Section 3426.2 of the California Civil Code, Tesla is entitled to an

4  injunction to prohibit Defendants from using, disclosing and/or otherwise benefiting from Tesla's

5  trade secrets, to eliminate any commercial advantage that Defendants may otherwise derive from

6  their misappropriation, and to require Defendants to immediately return to Tesla all confidential

7  information, documents, and any other misappropriated materials.

8    64. Pursuant to Section 3426.3 of the California Civil Code, Tesla is entitled to recover

9  its damages incurred by virtue of Defendants' wrongful misappropriation of their trade secrets, in

10  addition to disgorgement of all amounts by which Defendants have been unjustly enriched, or the

11  payment of a reasonable royalty, in an amount to be proven at trial.

12    65. In performing the conduct described herein, Defendants acted willfully and

13  maliciously, intending to injure Tesla and to wrongfully obtain an advantage at Tesla's expense.

14  Pursuant to Section 3426.3 of the California Civil Code, Tesla is entitled to all remedies available

15  under the law to compensate Tesla, including but not limited to an award of exemplary damages

16  against Defendants.

17    66. Pursuant to Section 3426.4 of the California Civil Code, Tesla is also entitled to an

18  award of its attorneys' fees and costs incurred in this action.

19  **THIRD CAUSE OF ACTION**

20  **(Breach of Contract)**

21  **Against the Individual Defendants (Turner, Cooper, Dement, and Emigh)**

22    67. Tesla incorporates the preceding paragraphs of this Complaint as if fully set forth

23  herein.

24    68. In connection with their employment at Tesla, the Individual Defendants entered

25  into several agreements, including but not limited to an NDA, in the form of Exhibit A, attached

26  hereto. These confidentiality obligations were periodically reinforced by Tesla throughout the

27  Individual Defendants' employment. As further alleged above, the NDA also contained limited

28  non-solicitation agreements as well.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

69.     Tesla performed all of its obligations under the NDAs.

70.     The Individual Defendants breached their NDAs with Tesla, including but not limited to paragraph 1 by, among other things, disclosing Tesla's confidential, proprietary, and trade secret information (as defined under the Non-Disclosure Agreements) to Defendant Zoox, a direct competitor of Tesla, without legal justification or excuse.

71.     Defendant Turner also breached his Non-Disclosure Agreement with Tesla, including but not limited to paragraph 9.2.1 by, among other things, directly and/or indirectly soliciting current Tesla employees for the benefit of Defendant Zoox, a direct competitor of Tesla, within twelve months of his employment with Tesla and without legal justification or excuse.

72.     As a direct and proximate result of the Individual Defendants' breaches of their NDAs, Tesla has sustained damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Breach of Duty of Loyalty, Cal. Labor Code §§ 2860, 2863)

### Against the Individual Defendants (Turner, Cooper, Dement, and Emigh)

73.     Tesla incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

74.     At all relevant times during their employment, the Individual Defendants, and each of them, owed Tesla a duty of loyalty.

75.     California Labor Code Section 2860 provides that everything an employee acquires by virtue of their employment (other than the compensation received) "belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of [their] employment." Cal. Labor Code § 2860.

76.     California Labor Code Section 2863 provides that "an employee who has any business to transact on [their] own account that is similar to that entrusted to the employee by [their] employer must give preference to the business of the employer." Cal. Labor Code § 2863.

77.     During the term of their employment with Tesla, each of the Individual Defendants breached their duties of loyalty owed to Tesla by, among other acts described above, taking with them and/or otherwise disclosing confidential, trade secret information to Defendant Zoox, a direct

competitor of Tesla.

78.     As a result of the Individual Defendants' breach of the duty of loyalty, Tesla has been damaged in amount to be proven at trial.

79.     The Individual Defendants' conduct was not only knowing, but malicious, fraudulent and oppressive and entitles Tesla to an award of punitive or exemplary damages.

### FIFTH CAUSE OF ACTION

### (Aiding and Abetting Breach of Duty of Loyalty)

### Against Zoox

80.     Tesla incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

81.     Upon information and belief, Zoox (including Turner and Emigh, who were Zoox employees through some of the relevant time period) knew that the Individual Defendants were employees of Tesla and therefore had a duty of loyalty to act in Tesla's best interests and to refrain from competing with Tesla during the term of their employment.  As such, Zoox intended to and did in fact aid and abet the Individual Defendants in breaching their duty of loyalty to Tesla by providing substantial assistance or encouragement to the Individual Defendants to so act.

82.     As a result of Zoox's substantial encouragement and/or assistance to the Individual Defendants in this regard, Tesla has been damaged in an amount to be proven at trial.

83.     Upon information and belief, Zoox's conduct was malicious, fraudulent and oppressive and entitles Tesla to an award of punitive and/or exemplary damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tesla respectfully prays for relief and judgment in its favor, as follows:

A.     That the Court issue a preliminary and permanent injunction returning Tesla's confidential, proprietary, and trade secret information, removing and/or destroying any and all of Tesla's confidential, proprietary, and trade secret information in the possession, custody or control of Defendants, and enjoining Defendants, their successors, officers, agents, and employees, and anyone acting in concert with or at their behest, from further access to or use of this information in

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

any way and from any further misappropriation of Tesla's confidential, proprietary, and trade secret information;

B. That Tesla be awarded its full actual and consequential damages according to proof at trial;

C. That Tesla be awarded prejudgment interest to the fullest extent available under applicable law;

D. That Tesla be awarded Defendants' unjust enrichment and restitution to the fullest extent available under applicable law;

E. That Tesla be awarded reasonable royalties to the fullest extent available under applicable law;

F. That Tesla be awarded punitive, enhanced, and/or exemplary damages, including but not limited to doubled damages and unjust enrichment under Cal. Civ. Code Section 3426, to the fullest extent available under applicable law;

G. That Tesla be awarded reasonable attorneys' fees and costs to the fullest extent available under applicable law;

H. That Tesla be awarded such other injunctive and provisional remedies, as appropriate, as well as an accounting to the fullest extent available under applicable law; and,

I. That Tesla be granted such other and further relief as the Court deems just and proper.

DATED: March 20, 2019                      SIDEMAN & BANCROFT LLP

                               By:  _____
                                              */s/ Zachary J. Alinder*
                                           Zachary J. Alinder
                                           *Attorneys for Plaintiff*
                                           TESLA, INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## JURY DEMAND

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiff Tesla, Inc. hereby demands a trial by a jury on all issues herein so triable.

DATED: March 20, 2019

SIDEMAN & BANCROFT LLP

By: _____/s/ Zachary J. Alinder_____

Zachary J. Alinder
*Attorneys for Plaintiff*
TESLA, INC.